Jacob W. GRUEBELE, a/k/a Jake Gruebele, Plaintiff and Appellee,

v.

Erna GRUEBELE, Defendant and Appellant.

Civ. No. 10386.

Supreme Court of North Dakota.

Sept. 30, 1983.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee; argued by Ward M. Kirby, Dickinson.

Rosenberg, Evans, Moench, & Baird, Bismarck, for defendant and appellant; argued by LaRoy Baird, Bismarck.

ERICKSTAD, Chief Justice.

The appellant, Erna Gruebele, appeals from a judgment of the District Court of Hettinger County, dated January 21, 1983, quieting title to the following 640 acres of farmland in Hettinger County:

Township 136 North, Range 91 West
East Half of the Southwest Quarter (E½SW¼) and South Half of the Southeast Quarter (S¼) of Section 8; Northwest Quarter (NW¼) of Section 16;
North Half (N½) of Section 17.

The appellee, Jacob W. Gruebele, initiated this quiet title action to ascertain the validity and priority of Erna's adverse claim to the described real property. Erna claims to be the owner in fee simple of an undivided one-fourth interest in all oil, gas, asphalt, coal, uranium, sand and gravel and all other minerals in and under and that may be produced from the property. The District Court of Hettinger County, The Honorable Allan L. Schmalenberger, decreed that Jacob is the owner in fee simple of the property, free of all claims of Erna, and that Erna has no right, title or interest in and to the land and premises. We reverse the judgment of the District Court of Hettinger County.

On November 8, 1979, a judgment was entered in the District Court of Burleigh County pursuant to findings of fact, conclusions of law, and order for judgment of the Honorable Benny A. Graff entitling Erna to an absolute decree of divorce from Jacob upon grounds of adultery. The court's judgment contained the following language:[1]

---

1. We note that the order for judgment of the District Court of Burleigh County contains an incorrect description of the real property previously owned by Jacob and Erna Gruebele.

Similar errors exist in the district court's judgment, amended judgment, and order for the appointment of a receiver. A correct description of the real property at issue is set forth at

"It is FURTHER ADJUDGED AND DETERMINED that the real estate described as ..., all in Township One Hundred Thirty-six North (136N), Range Ninety-one West (91W), Hettinger County, North Dakota, and all of the personal property consisting of farm machinery, grain, and all other personal property used in connection with the farming operation inclusive of motor vehicles shall be sold by a receiver and the proceeds therefrom less expenses of the receivership and other legitimate expenses of sale and any encumbrances thereon being deducted, and the balance thereof divided equally between the parties hereto, less the sum of $800.00 to be deducted from the share of the plaintiff." [2]

Service of the notice of entry of judgment was made on November 26, 1979. A partial transcript of the order dated September 20, 1979, clearly reveals the district court's "intention ... to divide this property equally among the parties subject to the payment of all debts presently outstanding."

On November 26, 1979, the district court entered an order appointing a receiver, Jim Raaum, for purposes which included the liquidation by public auction of "all of the real estate of the parties." Raaum filed an acknowledged surety bond in the amount of $50,000, dated November 21, 1979, and executed an acceptance of receivership on No-vember 26, 1979. Thereafter, Raaum caused the placement of several advertisements in newspapers in the general circulation area of the land. The advertisements included, apparently without written direction from the court, the language: "Mineral rights will be retained by the present owners."

Jacob was the successful bidder at the May 5, 1980, sale of the real property.[3] An order confirming the propriety of the sale by Raaum to Jacob was entered in the District Court of Burleigh County on March 11, 1981. The order directed Raaum to execute and deliver a receiver's deed to Jacob. The receiver's deed, executed by Raaum and dated March 23, 1981, conveyed to Jacob "all of the estate, title and interest" in the described real property. The deed was recorded on September 18, 1981, in the office of the Register of Deeds in Hettinger County. Neither the district court's order confirming the sale nor the receiver's deed executed by Raaum contain any language which may be construed as a reservation of a mineral interest in the property.[4]

On June 2, 1981, the District Court of Burleigh County issued an ex parte order purporting to convey to Erna a mineral interest in the described real property previously conveyed to Jacob by court-ordered

---

the outset of this opinion and is taken from the amended order of the District Court of Burleigh County dated January 11, 1982, and the order confirming the sale of the real property dated March 11, 1981.

2. The $800 deduction in Erna's share of the sale proceeds, as determined in the court's judgment, reflects advancements made by Jacob to Erna prior to the divorce decree.

3. A motion to hold Jacob in contempt of court and to set aside the sale of real and personal property was filed on November 24, 1980, together with the sworn affidavits of Erna Gruebele and Jim Raaum. Erna contended that Jacob became the successful bidder at the sale through his intimidation and coercion of other bidders and by causing other interested persons to withdraw from the bidding. The district court, after holding a hearing on the motion, determined that Erna failed to prove intimidation and coercion of bidders on the part of Jacob. In an order dated January 22, 1981, the court concluded that the sale of real property was proper; however, Jacob was ordered to account for certain improper sales of personal property. An amended judgment dated January 22, 1981, was entered to reflect the district court's order.

4. The effect, if any, of the advertisements and mineral retention language contained therein on the quantity and value of bids submitted at the sale of the described real property is not ascertainable from the record. Testimony elicited from Jacob at trial in the District Court of Hettinger County reveals, however, that Jacob believed that his own bid was being submitted for the surface acreage of the land only:

"Q. After referring to that newspaper advertisement and when you submitted your bid, you were well aware, were you not, that that bid was being submitted for the surface acreage only, correct?
"A. Right."

receiver's deed. The district court's order provided as follows:

"Max D. Rosenberg, attorney for the above-named plaintiff, having brought to the court's attention that the plaintiff Erna Gruebele is entitled to an undivided one-half interest in and to certain mineral interests in and to the real estate hereinafter described, and having found that the defendant has failed and refused to execute the proper conveyance to convey to the said plaintiff her share of said mineral interests, and it appearing to the court from all of the files and records herein that the said plaintiff is entitled to such conveyance, and having further found that the defendant has refused to execute a mineral deed in favor of said plaintiff, Erna Gruebele, and having determined that it was unnecessary to set a hearing in this matter and having determined that he could act in said matter on an ex parte order, it is hereby

"ORDERED that the plaintiff be and she is hereby entitled to an undivided one-half interest as shown by the records of the Register of Deeds of Hettinger County, North Dakota, in and to all of the oil, gas, asphalt, coal, uranium, sand and gravel, and all other minerals in and under and that may be produced from the ... described [real property].

"It is FURTHER ORDERED that upon the filing of record of this order with the above-named Register of Deeds, it shall constitute and have the same force and effect as a proper conveyance of said mineral interests from the defendant, Jacob W. Gruebele, to the plaintiff, Erna Gruebele."

Thereafter, because of an error in the legal description of the property in the order of June 2, 1981, an amended order, also ex parte, dated January 11, 1982, and recorded January 12, 1982, in the office of the Register of Deeds of Hettinger County, was entered in the District Court of Burleigh County on motion of Erna's attorney.

On January 27, 1982, another ex parte order was executed, amending further the order of June 2, 1981, which purported to convey to Erna an undivided one-half interest in the mineral estate held by Erna and Jacob in the described real property on November 9, 1979. This order was apparently deemed necessary to reflect the fact that Jacob and Erna together owned only a one-half mineral interest rather than the entire mineral interest in the described real property prior to their divorce on November 8, 1979. The order was recorded February 10, 1982, in the office of the Register of Deeds of Hettinger County.

Jacob contends that he first learned of the ex parte orders after receiving a less than adequate delay rental payment from Gulf Oil Exploration and Production Company for an oil and gas lease on the described real property. Upon inquiry, Jacob received a letter, dated March 30, 1982, from Gulf Oil, along with copies of the order of June 2, 1981, and the amended order of January 11, 1982. The amended order of January 27, 1982, was apparently not brought to his attention until he secured updated abstracts of title dated April 12, 1982.

Jacob then initiated a quiet title action by service of summons and complaint on April 26, 1982. The action was heard in the District Court of Hettinger County on December 15, 1982. In her trial brief, Erna alleged fee title ownership of an undivided one-fourth mineral interest in the described real property "based upon the record that has developed concerning the divorce between Erna and Jacob Gruebele." Erna contended that the ex parte orders of the District Court of Burleigh County were properly entered pursuant to Rule 60(a) of the North Dakota Rules of Civil Procedure and that the District Court of Hettinger County lacked jurisdiction to hear the case because it was "seeking to circumvent the valid orders of the divorce court."

Judgment was entered on January 21, 1983, pursuant to the findings of fact, conclusions of law, and order for judgment of the District Court of Hettinger County, which quieted title to the described real property in favor of Jacob. The court found that the District Court of Burleigh

County lacked jurisdiction to enter its ex parte orders purporting to affect the mineral rights of the described property. Specifically, the court found that the ex parte orders of the District Court of Burleigh County were not properly entered pursuant to Rule 60(a), N.D.R.Civ.P., because the "effect of the orders issued subsequent to judgment [was] . . . to change the original authority and direction of the receiver." The court determined that the divorce court's intent for equal distribution "was accomplished all pursuant to the clear, concise orders of the court, by the sale of all the property, and the division of the proceeds." As to the advertisements placed by Raaum, the court found that the language of the purported mineral reservation was unclear and was inserted in the advertisements by the receiver contrary to the clear intent and wording of the judgment and order appointing the receiver.

Erna now contends that the quiet title action was heard without jurisdiction in the District Court of Hettinger County and, therefore, represents an impermissible collateral attack upon the orders of the District Court of Burleigh County.

The record before us reflects that Jacob did not move, pursuant to Rule 60(b), N.D.R.Civ.P., to set aside the ex parte orders of the District Court of Burleigh County. Instead, he initiated a quiet title action in a different district court.

Erna raises the following issues:

1. Was the collateral action in the District Court of Hettinger County properly instituted to ascertain the validity of the ex parte orders made by the District Court of Burleigh County?

2. If such action was appropriate, did the District Court of Hettinger County properly interpret the divorce decree so as not to entitle Erna to a one-quarter mineral interest in the described real property?

Volume 56, Am.Jur.2d, *Motions, Rules, and Orders,* § 46, states in part as follows:

"Orders within the exercise of the inherent powers of the court and not absolutely void are not ordinarily subject to collateral attack. But a void order may be attacked collaterally.

"Generally, an order made by a court within the scope of its jurisdiction and regular on its face is presumed to be valid on collateral attack. Jurisdiction will be deemed to exist in the face of a collateral attack unless the record affirmatively shows that the tribunal did not have jurisdiction to make the order in question."

■ This court has previously set forth similar principles applicable to the collateral attack of judgments. We have held that a judgment may not be collaterally attacked by a party to the action in whose name it is entered or by one in privity with a party to the judgment. *Oakes Farming Association v. Martinson Brothers,* 318 N.W.2d 897, 905 (N.D.1982); ·*Hull v. Rolfsrud,* 65 N.W.2d 94, 98 (N.D.1954). An exception to this rule is that a judgment may be collaterally attacked if the court lacks jurisdiction to enter the judgment and the lack of jurisdiction is obvious from the record. *Oakes, supra; Texaro Oil Co. v. Mosser,* 299 N.W.2d 191, 195 (N.D.1980); *Lende v. Wiedmeier,* 179 N.W.2d 736, 738 (N.D.1970). Thus, in determining whether or not the quiet title action in the District Court of Hettinger County was properly instituted, we must determine whether or not the District Court of Burleigh County had jurisdiction to enter the ex parte order of June 2, 1981, and the amended orders of January 11, 1982, and January 27, 1982.

The divorce decree of the District Court of Burleigh County ordered that the property be sold and that the proceeds be divided equally. It contained no language directing a reservation of mineral interests. We have held that, except for matters over which the court has continuing jurisdiction when there are changed conditions, a divorce decree is final as to all issues litigated in the divorce suit. *Zent v. Zent,* 281 N.W.2d 41, 44 (N.D.1979); *Albrecht v. Albrecht,* 120 N.W.2d 165, 167 (N.D.1963). Jacob contends that the ex parte order of June 2, 1981, and the subsequent amendments thereto, modify the previous judgment of the divorce court by conveying to

Erna a mineral interest in the property not reserved in the court's order confirming the sale or the receiver's deed.

■ We have held that a division of property decreed by the court is not subject to modification other than in the same manner and on the same grounds as other judgments. *Harwood v. Harwood,* 283 N.W.2d 144, 146 (N.D.1979); *Nastrom v. Nastrom,* 262 N.W.2d 487, 492 (N.D.1978). The following language from the court's syllabus in *Cokins v. Frandsen,* 136 N.W.2d 377, 378 (N.D.1965), is relevant to this appeal:

"3. Any order made subsequent to final judgment must be for the purpose of carrying out the provisions of the judgment. Insofar as any such order attempts to modify such judgment, unless made on grounds provided for in the North Dakota Rules of Civil Procedure for amending or correcting a judgment, and unless made within the time provided for such amendment or correction, it is void."

Thus, in determining whether or not the District Court of Burleigh County had jurisdiction to enter its order of June 2, 1981, and the subsequent amendments thereto, we look to whether or not the orders were made on grounds provided for in the North Dakota Rules of Civil Procedure.

The District Court of Burleigh County did not specifically set forth its authority for issuing the ex parte order of June 2, 1981, but merely determined that "it was unnecessary to set a hearing in this matter" and that it "could act in said matter on an ex parte order." Erna contends that the order was issued pursuant to Rule 60(a), N.D.R.Civ.P. Rule 60(a), in relevant part, reads:

"*(a) Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversights or omission may be corrected by the court at any time of its own initiative or on the motion of any party

and after such notice, if any, as the court orders...."

Rule 60(a) applies to the correction of errors that properly may be described as clerical *or* arising from oversight or omission. Erna contends that the District Court of Burleigh County confirmed the conveyance of the described real property to Jacob by oversight. The alleged oversight is that the order confirming the sale and the receiver's deed should have contained the reservation language of the advertisement.

■ Generally, Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.[5] *Pattiz v. Schwartz,* 386 F.2d 300, 303 (8th Cir.1968); 11 Wright & Miller, Federal Practice and Procedure: Civil § 2854, p. 149 (1973). We believe it clear that Rule 60(a) was not designed to affect substantive portions of a judgment or order, nor to act as a substitute for appeal. *Schnell v. Schnell,* 252 N.W.2d 14, 17 (N.D. 1977). The rule is appropriately utilized only for "the correction of irregularities which becloud but do not impugn [the judgment]." *United States v. Stuart,* 392 F.2d 60, 62 (3d Cir.1968). The problem is essentially one of characterization. *Kelley v. Bank Building and Equipment Corporation of America,* 453 F.2d 774, 778 (10th Cir. 1972). It must be determined "whether a substantive change or amendment was made or whether the amended conclusions and judgment were in the nature of corrections." *Kelley, supra.*

■ A court may correct, pursuant to Rule 60(a), errors created by oversight or omission that cause the judgment to fail to reflect what was intended at time of trial. *Mullins v. Nickel Plate Mining Company,* 691 F.2d 971, 973 (11th Cir.1982); *Warner v. City of Bay St. Louis,* 526 F.2d 1211, 1212 (5th Cir.1976); *Pattiz, supra,* 386 F.2d at 303. However, Rule 60(a) is not a vehicle

5. Rule 60 was adopted from Rule 60 of the Federal Rules of Civil Procedure; therefore, when construing it, we are guided by and give deference to Federal case law interpreting Rule

60 of the Federal Rules of Civil Procedure. *See Byron v. Gerring Industries, Inc.,* 328 N.W.2d 819, 821, n. 3 (N.D.1982); *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973).

for relitigating matters that have already been litigated and decided, nor to change what has been deliberately done. *Security Mutual Casualty Co. v. Century Casualty Co.,* 621 F.2d 1062, 1065 (10th Cir.1980); *Morgan Guaranty Trust Co. of New York v. Third National Bank of Hampden County,* 545 F.2d 758, 760 (1st Cir.1976); see generally, 6A Moore's Federal Practice, § 60.06(1), p. 4055 (1983); 11 Wright & Miller § 2854, *supra,* at 154.

■ Erna contends that the divorce court's order of June 2, 1981, was entered "to effectuate the court's original intent, as expressed in the divorce decree" and, therefore, is within the scope of Rule 60(a). It appears clear from the record that it was the original intent of the District Court of Burleigh County to divide the described real property equally between Erna and Jacob. The sale of the real property by the court-appointed receiver was the means utilized by the court to effectuate its intent to divide the property equally.

At first glance, it may appear that the sale part of the judgment was carried out when the sale to the highest bidder was confirmed and the receiver's deed was delivered. In reality, however, it was not properly carried out as the real property had been advertised for sale with a reservation of the mineral interests which the parties owned and the bid was only for the surface interest. The equal distribution part of the judgment was also affected by the advertising procedure as Jacob bid for the surface and received both the surface and the minerals for the price of the surface. The error could have been corrected through a 60(b) motion under the North Dakota Rules of Civil Procedure providing notice and hearing. Had that been done, the court would have had the alternative of canceling the sale and ordering a new one without the reservation of minerals or of doing what it did, permitting the surface to be sold as advertised with an equal division of the minerals. The main object of the court's judgment was not the sale of all the property, but the equal division of it. The sale was only the means of attaining that

objective. With this analysis, it is clear that a mistake occurred in carrying out this objective.

■ Unless an abuse of discretion is shown, a 60(b) order is not normally reversed by this court. *Galloway v. Galloway,* 281 N.W.2d 804, 806 (N.D.1979); *Bettger v. Bettger,* 280 N.W.2d 915, 917 (N.D.1979); *Gajewski v. Bratcher,* 240 N.W.2d 871, 886 (N.D.1976). As the correction of the judgment was done under Rule 60(a), N.D.R. Civ.P., and not under Rule 60(b), N.D.R. Civ.P., we are faced with the issue of determining whether or not that was a fatal defect in this case.

■ In light of the analysis that we have made, although we would have preferred that change be made under Rule 60(b), N.D.R.Civ.P., we do not believe, under the circumstances of this case, a 60(b) motion procedure was required to correct what was an error arising from oversight. Thus, we conclude that the district court's order of June 2, 1981, was properly entered pursuant to Rule 60(a), N.D.R.Civ.P., as the correction of a mistake resulting from the failure to incorporate the mineral reservation language contained in the advertisements in the order confirming the sale and the receiver's deed. The mistake caused the order confirming the sale of March 11, 1981, to fail to reflect the intent of the District Court of Burleigh County to give each of the parties an equal share of the marital estate.

■ The district court's amended orders of January 11, 1982, and January 27, 1982, were also proper pursuant to Rule 60(a). It is apparent from the record that the incorrect land description in the order of June 2, 1981, as corrected by amended order dated January 11, 1982, was the result of a clerical mistake. *See United States v. 706.98 Acres of Land in Montgomery County, Arkansas,* 158 F.Supp. 272, 275 (W.D.Ark. 1958). The January 27, 1982, order, which clarified the fact that the parties together owned only one-half of the minerals instead of all of the minerals, is also properly char-

acterized as a Rule 60(a) correction involving a clerical mistake.

Our determination that the ex parte orders of the District Court of Burleigh County were within the scope of Rule 60(a) necessitates the conclusion that the District Court of Hettinger County did not have jurisdiction to review the matter in a quiet title action.[6] We therefore reverse the judgment of the District Court of Hettinger County and reinstate the orders of June 2, 1981, January 11, 1982, and January 27, 1982, of the District Court of Burleigh County, with costs on appeal to Erna.

SAND and PEDERSON, JJ., and PAULSON,* Surrogate Justice, concur.

VANDE WALLE, Justice, concurring specially.

I agree that the basic premise of the divorce court's judgment was to divide the property of the parties equally, but it also appears that it was the intent of the court that all the property of the parties be sold. The property was, in fact, all sold and Jacob purchased the real property in question. In this respect there was no mistake. However, because the real property was advertised as being offered with a reservation of minerals and because Jacob testified he knew he was not to receive the minerals, the question arises as to whether or not Erna received a fair share of the proceeds of the sale of the property. Although, as the majority opinion notes, there is no evidence in the record to indicate that the bids on the property would have been higher had it been advertised without a mineral reservation, it is apparent the minerals have some value because there is a lease on the minerals and the reduced delay rental payment was the cause of Jacob's realization of the divorce court's ex parte orders.

I concur in the result reached by the majority opinion because it appears to me that in matters of property division the divorce court is the proper place to determine any mistakes which may have occurred in carrying out the court's judgment. Therefore, in the broad sense, I agree that the divorce court had jurisdiction to issue the ex parte orders which gave Erna one-half of the couple's interest in the minerals. If Jacob was dissatisfied with this result he could have petitioned the divorce court for a hearing on the matter rather than instituting a separate action before another court to challenge those orders.

Because it is apparent that the divorce court intended that all the property, including the minerals, be sold, the real property should have been *advertised* and sold without reservation. When the sale, but not the advertisement, was completed without reservation, the divorce court, in an apparent attempt to rectify any possible inequity, determined, ex parte, that an amended judgment should be entered transferring one-half of the minerals Jacob had purchased, which purchase the divorce court had affirmed, to Erna. At that time, it seems to me, the better procedure would have been to give notice to Jacob and permit a hearing thereon. It stretches the intention of Rule 60(a), N.D.R.Civ.P., to conclude that this series of events was a clerical mistake or an "error arising from oversights or omission" which permitted the entry of a corrective order without a hearing as contemplated by that rule. The error was on the part of the receiver in advertising the property for sale subject to a mineral reservation in the owners (Jacob and Erna) contrary to the order of the court and then, in an apparent attempt to correct that error, compounding the problem by conveying the property to Jacob without such a reservation. There is no evidence, however, that Jacob was the cause of these actions by the receiver. Had a hearing been held at the time this error was brought to the attention of the trial court by Erna's attorney, perhaps the proceedings

6. The impropriety of the collateral action in the District Court of Hettinger County obviates our resolution of the second issue raised by Erna regarding the court's interpretation of the divorce decree.

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.

resulting in this appeal would have been avoided.

Although equity demands that we reverse the judgment, due process also may demand that Jacob receive notice and the opportunity for a hearing before one-half of the mineral interest he purchased, which purchase the divorce court affirmed, was transferred to Erna. If, as Jacob contends, the advertisement with the mineral reservation had no effect on the bids submitted for the property, he would be entitled to present his evidence, Erna would have the opportunity to challenge his contention, and the judge ordering the sale of the property in the first instance would, most properly, be the one to resolve the issue.